

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                                  CRIMINAL NO. 10-CR-20400

v.

                                  HON. ARTHUR J. TARNOW

D-1   GREGORY CARR
       also known as "Paul Cutlass,"

D-2   LAURIE CARR,             VIOLATIONS:     18 U.S.C. § 2
                                                18 U.S.C. § 371

D-3   NAYUBET LOANI SWASO,                18 U.S.C. § 2422(a)
                                                18 U.S.C. § 1956(h)

D-4   MICHELLE MATARAZZO,

D-5   FABIOLA CONTRERAS

      Defendants.

_____/

## FIRST SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

## BACKGROUND

At times pertinent to this Indictment:

    1.     Beginning in approximately 2001 and continuing through July 2010, defendants

GREGORY CARR (also known as PAUL CUTLASS) (hereinafter referred to as "GREG

CARR") and LAURIE CARR operated a prostitution business under the guise of an escort

service known as "Miami Companions" based in the Miami, Florida area, through which GREG

CARR and LAURIE CARR marketed women to perform prostitution – that is, sexual acts with

customers (hereinafter "johns") in exchange for money – in various cities, including the

Washington, D.C. area; the Detroit, Michigan area; the Minneapolis, Minnesota area; the

Chicago, Illinois area; the Boston, Massachusetts area; the Indianapolis, Indiana area; the

Milwaukee, Wisconsin area; the Cincinnati, Ohio area; the Dayton, Ohio area, and the Cleveland,

Ohio area.

2.      Defendant GREG CARR owned and operated Miami Companions through MC

Consulting Associates, Inc., a corporate entity incorporated in the State of Florida and controlled

by defendant GREG CARR.

3.      Defendant LAURIE CARR operated Miami Companions with her husband,

GREG CARR, and was listed as a Vice President of MC Consulting Associates, Inc.

4.      Defendant NAYUBET LOANI SWASO, who was known as "Nya," assisted in

operating a call center for Miami Companions in Panama, and operated the call center for Miami

Companions in Costa Rica.  SWASO also worked as a prostitute for Miami Companions.

5.      Defendant MICHELLE MATARAZZO started working as a prostitute for Miami

Companions.  Defendant MICHELLE MATARAZZO, who was known as "Mickey," then

became an office manager for the business, and assisted in operating the telephones, directing

travel arrangements for the women to different cities where they exchanged sex for money,

arranging appointments for the johns, and overseeing banking operations for the business, among

other tasks.

6.      Defendant FABIOLA CONTRERAS, who was also known as "Antonella,"

started working as a prostitute for Miami Companions in the spring of 2008.  Defendant

FABIOLA CONTRERAS owned a business under the name of FCG Multiple Services.

Beginning in 2010, defendant FABIOLA CONTRERAS and GREG CARR used her business

bank account for the prostitution business.

## GENERAL ALLEGATIONS

7.      Defendants GREG CARR and LAURIE CARR operated their prostitution

business by recruiting, directing, managing, and overseeing women to work as prostitutes, and

received payment for prostitution services provided by the women.

8.      Defendants GREG CARR and LAURIE CARR operated Miami Companions by

use of facilities of interstate and foreign commerce, including an Internet web site

("www.miamicompanions.com"), electronic mail, and cellular telephones.

9.      Defendants GREG CARR and LAURIE CARR, aided and abetted by other

persons, and conspiring with other persons, used the Miami Companions website to recruit

women, to market women for prostitution by posting photographs of and biographical

information about the women, to solicit johns, and to inform johns when women would be

visiting a particular city.

10.      Defendants GREG CARR and LAURIE CARR, aided and abetted by other

persons, and conspiring with other persons, including NAYUBET LOANI SWASO and

MICHELLE MATARAZZO, used the Internet, electronic mail, and cellular phones to, among

other things, make travel and lodging arrangements for women to visit cities for the purpose of

prostitution; communicate with women working as prostitutes; and communicate with johns to

arrange appointments with women for the purpose of engaging in sexual acts in exchange for

money.

3

11.     Defendants GREG CARR and LAURIE CARR, aided and abetted by other persons, and conspiring with other persons, placed advertisements soliciting johns for sexual encounters with the women working for Miami Companions on Internet websites, including Eros.com, bigdoggie.com, and others.

12.     Defendants GREG CARR and LAURIE CARR, aided and abetted by other persons, and conspiring with other persons, would hire women to work for Miami Companions as prostitutes, under the name of "escorts" or "companions" in order to conceal their activities (i.e., exchanging sex for money) from law enforcement.

13.     Once the women were hired by Miami Companions, they would take photographs, often explicit, to post on the Miami Companions website or other advertising websites. Miami Companions worked with several photography studios in the area, including Clic, Pure Skin, and Paul Miller, and employees who worked for those studios.  Some of the employees who worked for Clic, Pure Skin, and Paul Miller knew that Miami Companions was a prostitution business, and these employees assisted defendants GREG CARR and LAURIE CARR and Miami Companions in the operation of the prostitution business by taking photographs, often explicit, of the women for use on the Miami Companions website and in advertising.

14.     To make an appointment, a john would contact Miami Companions, usually by telephone, to schedule an appointment with a prostitute working locally, in the south Florida area, or while the prostitute was traveling to another city.  On behalf of Miami Companions, defendants NAYUBET LOANI SWASO, MICHELLE MATARAZZO, and/or other Miami Companions employees answering the telephones would "verify" the john by requesting employment information in order that Miami Companions could confirm that the john was not

4

law enforcement and that he was employed. Once the john was "verified," an appointment with one of the prostitutes could be scheduled.

15.     Defendant MICHELLE MATARAZZO, aided and abetted by others and conspiring with others, would make the travel arrangements, including flights and hotel reservations, on behalf of the woman who was traveling to work as a prostitute for Miami Companions. MICHELLE MATARAZZO paid for these expenses using a bank account at Bank of America in the name of MC Consulting Associates. GREG CARR and LAURIE CARR were the signatories on the account for MC Consulting Associates.

16.     Once the woman arrived at the designated "touring" city, she would go to the reserved hotel. The johns would be instructed where to meet the prostitute. Employees working on behalf of Miami Companions, including defendants NAYUBET LOANI SWASO, MICHELLE MATARAZZO, and others, would call the john to advise him what room he should go to. The prostitute would contact Miami Companions employees, including defendants NAYUBET LOANI SWASO, MICHELLE MATARAZZO, and/or others, to advise when she was ready for the next appointment. The prostitute would typically contact Miami Companions employees, including NAYUBET LOANI SWASO, MICHELLE MATARAZZO, and/or others to advise when she had completed an appointment.

17.     Each of the johns paid the women in cash at the beginning of the appointment in exchange for sexual acts. On occasion, the johns would pay by credit card. The credit card statement for the transaction would read "MC Consulting Associates."

18.     Defendants GREG CARR and LAURIE CARR permitted the women to keep sixty (60) percent of the payment from the johns, minus approximately 50 percent of the cost of

travel and lodging, and required them to send to Miami Companions  forty (40) percent of the amount paid by the johns.

19.     Defendant MICHELLE MATARAZZO would direct the women to pay the amount owed to Miami Companions on a daily basis.  Defendant MICHELLE MATARAZZO would prepare daily reports for GREG CARR and LAURIE CARR, indicating how much money each woman owed Miami Companions, whether they had paid, or whether GREG CARR should pick up the money owed from the woman.

20.     The women working for Miami Companions were directed to pay their portion of the funds owed to Miami Companions by: (1) depositing the portion into a Bank of America account under the name of MC Consulting Associates, RLS Holdings, FCG Multiple Services, or DJM Entertainment; (2) depositing the portion into a Fifth Third Bank Account under the name of MC Consulting Associates, if a Bank of America was not available in the city in which they were working, and from which account the funds would be transferred by check by LAURIE CARR to the Bank of America account; (3) purchasing a prepaid debit Green Dot card and depositing their portion onto the Green Dot card, and then providing that information to defendant MICHELLE MATARAZZO, in order that defendant MICHELLE MATARAZZO could transfer the money to an account controlled by GREG CARR or LAURIE CARR or Miami Companions; or (4) giving the portion owed to GREG CARR, or someone acting on his behalf, in person. The women were directed to use these methods in order to disguise the nature, location, source and ownership of the funds earned through illegal activity.

21.     On some occasions, GREG CARR would collect cash due to Miami Companions from the prostitutes in person, either from women working as prostitutes for Miami Companions

in the south Florida area, or from women traveling as they were arriving at the airport from their "tour."

22.     During the initial stages of the operation of the Miami Companions business, in the early 2000's, Miami Companions was booking approximately 100 appointments a day on average.  The expenses associated with the call center structure were averaging $10,000 a week. For this reason, and to avoid law enforcement, GREG CARR and LAURIE CARR decided to move the Miami Companions call center to Panama.

23.     The call center in Panama was operated out of a leased office building.  GREG CARR and LAURIE CARR set up a bank account in Panama in the name of a co-conspirator who worked for Miami Companions, who operated the Panamanian call center and to whom they wired money from the Bank of America MC Consulting Associates bank account in the United States.  The money wired to Panama from the United States each week paid for the salaries of those employees working in the call center, as well as the lease payments for the Panama office and a penthouse, and property owned by the Carrs in Panama. At some point during the operation of the call center in Panama, defendant NAYUBET LOANI SWASO started working at the call center for Miami Companions.

24.     After the call center in Panama was closed, defendants GREG CARR and LAURIE CARR opened a call center in Costa Rica, which was managed by defendant NAYUBET LOANI SWASO on behalf of Miami Companions.  GREG CARR and LAURIE CARR set up a bank account in Costa Rica in the name of defendant NAYUBET LOANI SWASO, to whom they wired money from the Bank of America MC Consulting Associates bank account in the United States. The money wired to defendant NAYUBET LOANI SWASO in

7

Costa Rica from the United States each week paid for the salaries of those employees working in the call center, as well as the lease payments for the Costa Rica office, a property owned by the Carrs in Panama, and the exotic beach house owned by the Carrs in Costa Rica.

25.     During the course of the operation of their business, GREG CARR and LAURIE CARR and Miami Companions operated "exotic beach houses" in Mexico, Columbia, and Costa Rica, among other countries.  GREG CARR and LAURIE CARR hired women, typically non-United States citizens, to work as prostitutes in these exotic beach houses. Johns, typically Miami Companion clients from the United States, would pay several thousand dollars for an appointment to visit one of the exotic beach houses, in order to have sex with one or more women working for Miami Companions over the course of a weekend.

26.     The Miami Companions website was administered by Web Matrix Solutions and its employees, in exchange for payment for services by GREG CARR, LAURIE CARR, or MICHELLE MATARAZZO, on behalf of Miami Companions.  Payments to Web Matrix Solutions and its employees typically were made with funds from the Bank of America MC Consulting Associates bank account.

27.     Some of the employees of Web Matrix Solutions knew that Miami Companions was a prostitution business, and these employees assisted defendants GREG CARR and LAURIE CARR and Miami Companions in the operation of the prostitution business by, among other activities, posting photographs and biographical information of the women on the website, including some topless photographs, and updating the website with information showing when women would be in a particular city.

28.     The Miami Companions database was administered by ITI Technical Solutions,

8

Inc. and its employees in exchange for payment for services by GREG CARR, LAURIE CARR, or MICHELLE MATARAZZO, on behalf of Miami Companions. Payments to ITI Technical Solutions, Inc. and its employees typically were made with funds from the Bank of America MC Consulting Associates bank account.

29.     The Miami Companions database, which was password protected, contained information about the johns, including their place of employment, contact information, and sexual preferences, as well as calendar information regarding which women were traveling to which cities to perform sexual acts in exchange for money with the johns.

30.     Miami Companions employees could access the database in order to "verify" the johns when the johns called to schedule an appointment with one of the women. Miami Companions employees could enter information regarding appointments and new clients into the database. The database was password-protected, and security features were used to prohibit employees from being able to copy or delete the database.  Some of the employees of ITI Technical Solutions knew that Miami Companions was a prostitution business, and these employees assisted defendants GREG CARR and LAURIE CARR and Miami Companions in the operation of the prostitution business by, among other things, assisting in adding security features in order to hide the database from law enforcement, designing the calendar to accommodate designations of appointments with various women working as prostitutes with johns in the south Florida area and in cities to which the women were traveling, and including a client database of tens of thousands of client names that included information about the clients' employment, contact information, and sexual likes and dislikes. In order to avoid detection by law enforcement, the database was hosted on a server in Panama, but was accessible from the

9

United States through password-protected Uniform Resource Locators (URLs).

31.     In addition to working in the south Florida area, including Miami, Florida, prostitutes working for Miami Companions traveled to many cities, including, but not limited to: the Detroit, Michigan area; the Washington, D.C. area; the Minneapolis, Minnesota area; the Chicago, Illinois area; the Boston, Massachusetts area; the Indianapolis, Indiana area; the Milwaukee, Wisconsin area; the Cincinnati, Ohio area; the Dayton, Ohio area, and the Cleveland, Ohio area. to perform sexual acts in exchange for money. At one time, the state of Michigan was one of the states in which the prostitutes working for Miami Companions had the most numerous appointments, outside the Miami, Florida area.

32.     On or about January 18, 2008, a woman working for Miami Companions as a prostitute (hereinafter, "Female A"), flew to the Detroit, Michigan area from outside the State of Michigan to engage in sex for money with johns.

33.     On or about September 24, 2008, and continuing until on or about September 26, 2008, a woman working for GREG CARR as a prostitute (hereinafter, "Female B"), flew to the Detroit, Michigan area from outside the State of Michigan to engage in sex for money with johns. Female B was working as a prostitute at GREG CARR's direction, under a companion prostitution organization operated through www.eliteconnexxxions.com.

34.     On or about January 5, 2009, a woman working for Miami Companions as a prostitute (hereinafter, "Female C"), flew to the Detroit, Michigan area from outside the State of Michigan to engage in sex for money with johns.  On or about January 7, 2009, Female C exchanged sex for money with at least two johns at a hotel in Novi, Michigan.

35.     On or about August 28, 2007, a woman working for Miami Companions as a

10

prostitute (hereinafter, "Female D"), came to the Detroit, Michigan area from outside the State of Michigan to engage in sex for money with johns.

36.     On or about October 31, 2007, a woman working for Miami Companions as a prostitute (hereinafter, "Female E"), came to the Detroit, Michigan area from outside the State of Michigan to engage in sex for money with johns.

37.     On or about March 16, 2008, a woman working for Miami Companions as a prostitute (hereinafter, "Female F"), came to the Detroit, Michigan area from outside the State of Michigan to engage in sex for money with johns.

38.     On or about December 1, 2008, a woman working for Miami Companions as a prostitute (hereinafter, "Female G"), came to the Detroit, Michigan area from outside the State of Michigan to engage in sex for money with johns.

39.     On or about January 19, 2009, a woman working for Miami Companions as a prostitute (hereinafter, "Female H"), came to the Detroit, Michigan area from outside the State of Michigan to engage in sex for money with johns.

40.     On or about March 4, 2009, defendant NAYUBET LOANI SWASO, using the name "Sierra Sanchez," traveled to the Detroit, Michigan area from the Miami, Florida area on behalf of defendants GREG CARR and LAURIE CARR and Miami Companions. NAYUBET LOANI SWASO stayed in a hotel in Southfield, Michigan, and met with johns where she exchanged sex for money.   After defendant NAYUBET LOANI SWASO was briefly detained by law enforcement for her prostitution activities, GREG CARR and LAURIE CARR and Miami Companions decided not to schedule appointments for prostitutes in Michigan, out of fear of law enforcement.

41.     Money was deposited to Miami Companions banking accounts from Bank of America or Fifth Third banks in the Eastern District of Michigan by women working as prostitutes for defendants GREG CARR and LAURIE CARR and Miami Companions. Each of the deposits was to an account owned and controlled by GREG CARR and LAURIE CARR and/or someone assisting them in their operation of Miami Companions, in the Miami, Florida area, from a city in the Eastern District of Michigan, as follows:

**Bank of America**

| Date | City | Amount |
|------|------|--------|
| 3/27/2007 | Detroit | $   600 |
| 7/7/2008 | Livonia | $ 1,781 |
| 7/9/2008 | Livonia | $ 1,326 |
| 7/24/2008 | Livonia | $   755 |
| 7/25/2008 | Livonia | $ 1,418 |
| 9/10/2008 | Detroit | $ 1,200 |
| 10/1/2008 | Novi | $ 1,335 |
| 10/16/2008 | Detroit | $ 2,224 |
| 10/22/2008 | Detroit | $   550 |
| 10/31/2008 | Detroit | $ 1,000 |
| 11/3/2008 | Eastpointe | $ 2,214 |
| 11/13/2008 | Detroit | $ 1,800 |
| 12/12/2008 | Orion Twnshp | $   910 |
| 12/16/2008 | Detroit | $ 2,083 |
| 12/22/2008 | Detroit | $   490 |
| 1/7/2009 | Detroit | $   710 |

12

| 1/14/2009 | Detroit | $   650 |
| 1/21/2009 | Detroit | $1,000 |

**Fifth Third Bank**

| Date | City | Amount |
|---|---|---|
| 5/21/2007 | Warren | $ 650 |
| 7/31/2007 | Southfield | $ 1,384 |
| 8/28/2007 | Southfield | $ 2,200 |
| 8/31/2007 | Southfield | $ 575 |
| 9/21/2007 | Southfield | $ 720 |
| 10/19/2007 | Southfield | $ 2,300 |
| 10/29/2007 | Southfield | $ 3,340 |
| 10/30/2007 | Southfield | $ 670 |
| 10/31/2007 | Southfield | $ 250 |
| 11/27/2007 | Southfield | $ 970.20 |
| 11/28/2007 | Southfield | $ 900 |
| 12/4/2007 | Eastpointe | $ 3,800 |
| 1/14/2008 | Southfield | $   180 |
| 1/14/2008 | Southfield | $ 2,403.90 |
| 1/18/2008 | Southfield | $ 2,310 |
| 2/19/2008 | Detroit | $ 1,210 |
| 2/21/2008 | Detroit | $ 1,500 |
| 3/17/2008 | Detroit | $ 1,627.75 |
| 3/19/2008 | Detroit | $ 1,613.45 |
| 4/21/2008 | Novi | $ 2,364 |
| 6/18/2008 | Novi | $ 1,876 |
| 6/24/2008 | Novi | $ 1,840 |

| | | |
|---|---|---|
| 7/15/2008 | Southfield | $ 1,500 |
| 8/7/2008 | Eastpointe | $ 260 |
| 9/4/2008 | Novi | $ 1,060 |
| 9/10/2008 | Auburn Hills | $ 1,611 |
| 10/6/2008 | Southfield | $ 1,812.75 |
| 10/17/2008 | Southfield | $ 1,040 |
| 11/5/2008 | Novi | $ 1,035 |
| 12/2/2008 | Southfield | $ 1,100 |
| 1/29/2009 | Novi | $ 700 |

42.     Beginning on or about February 10, 2010, prostitutes working for Miami Companions started depositing proceeds from the exchange of sexual activities for money into the FCG Multiple Services bank account at Bank of America. The signatory for this account was defendant FABIOLA CONTRERAS.

43.     In addition, on or about February 18, 2010, defendant GREG CARR directed that all of the remaining proceeds in the MC Consulting Associates merchant account be transferred to the FCG Multiple Services bank account at Citibank.  The amount remaining in the MC Consulting Associates merchant account was $20,000.

44.     On or about March 12, 2010, a check for $20,000, consisting of funds from the MC Consulting Associates merchant account, was deposited into the FCG Multiple Services Account.  On or about March 23, 2008, FABIOLA CONTRERAS transferred these funds out of the account.

45.     Between February and June 2010, deposits were made by women working for Miami Companions as prostitutes into the FCG Multiple Services account.  Expenses for the

14

business were also paid by FABIOLA CONTRERAS from this account, including to Web Matrix

Solutions, Inc., photographers, employees, and others.

## COUNT ONE

*(Conspiracy* – 18 U.S.C. § 371)

D-1     GREGORY CARR
        also known as "Paul Cutlass,"
D-2     LAURIE CARR,
D-3     NAYUBET LOANI SWASO,
D-4     MICHELLE MATARAZZO
D-5     FABIOLA CONTRERAS

46.     Paragraphs 1 through 45 are incorporated in this Count by reference as though

fully set forth herein.

47.     From approximately 2001 and continuing through July 2010, defendants

GREGORY CARR, LAURIE CARR, NAYUBET LOANI SWASO, and MICHELLE

MATARAZZO, in the Eastern District of Michigan and elsewhere, did knowingly, unlawfully,

and willfully conspire, confederate, and agree together and with other persons known and

unknown to the Grand Jury, to commit the following offense against the United States:  coercion

and enticement of persons to travel in interstate and foreign commerce to engage in prostitution

and other sexual activity for which any person can be charged with a criminal offense, in

violation of Title 18, United States Code, Section 2422(a).

## OVERT ACTS

48.     In furtherance of the conspiracy, and to effect its objects, the defendants and their

co-conspirators committed the acts described in paragraphs 1 through 45 of this Indictment,

among others, in the Eastern District of Michigan and elsewhere.


## COUNT TWO

*(Coercion and Enticement of a Person for Prostitution; Aiding and Abetting --*
18 U.S.C. § 2422(a) and 2)

D-1     GREGORY CARR
       also known as "Paul Cutlass,"
D-2     LAURIE CARR

49.     Paragraphs 1 through 45 are incorporated in this Count by reference as though

fully set forth herein.

50.     Beginning on or about January 18, 2008, in the Eastern District of Michigan and

elsewhere, defendants GREGORY CARR and LAURIE CARR, aided and abetted by others,

attempted to and did knowingly persuade, induce, entice, or coerce an individual, namely Female

A, to travel in interstate commerce to engage in prostitution or in any sexual activity for which

any person can be charged with a criminal offense, all in violation of Title 18, United States

Code, Sections 2422(a) and 2.


## COUNT THREE

*(Coercion and Enticement of a Person for Prostitution; Aiding and Abetting --*
18 U.S.C. § 2422(a) and 2)

D-1     GREGORY CARR
       also known as "Paul Cutlass,"

51.    Paragraphs 1 through 45 are incorporated in this Count by reference as though fully set forth herein.

52.    Beginning on or about September 26, 2008, in the Eastern District of Michigan and elsewhere, defendant GREGORY CARR, aided and abetted by others, attempted to and did knowingly persuade, induce, entice, or coerce an individual, namely Female B, to travel in interstate commerce to engage in prostitution or in any sexual activity for which any person can be charged with a criminal offense, all in violation of Title 18, United States Code, Sections 2422(a) and 2.

## COUNT FOUR

*(Coercion and Enticement of a Person for Prostitution; Aiding and Abetting --*
*18 U.S.C. § 2422(a) and 2)*

D-1    GREGORY CARR
       also known as "Paul Cutlass,"
D-2    LAURIE CARR

53.    Paragraphs 1 through 45 are incorporated in this Count by reference as though fully set forth herein.

54.    Beginning on or about January 5, 2009, and continuing through approximately January 7, 2009, in the Eastern District of Michigan and elsewhere, defendants GREGORY CARR and LAURIE CARR, aided and abetted by others, attempted to and did knowingly persuade, induce, entice, or coerce an individual, namely Female C, to travel in interstate commerce to engage in prostitution or in any sexual activity for which any person can be charged with a criminal offense, all in violation of Title 18, United States Code, Sections 2422(a) and 2.

17

## COUNT FIVE

*(Coercion and Enticement of a Person for Prostitution; Aiding and Abetting --*
*18 U.S.C. § 2422(a) and 2)*

D-1     GREGORY CARR
          also known as "Paul Cutlass,"

D-2     LAURIE CARR

55.     Paragraphs 1 through 45 are incorporated in this Count by reference as though fully set forth herein.

56.     On or about March 4, 2009, in the Eastern District of Michigan and elsewhere, defendants GREGORY CARR and LAURIE CARR, aided and abetted by others, attempted to and did knowingly persuade, induce, entice, or coerce an individual, namely defendant NAYUBET LOANI SWASO, to travel in interstate commerce to engage in prostitution or in any sexual activity for which any person can be charged with a criminal offense, all in violation of Title 18, United States Code, Sections 2422(a) and 2.

## COUNT SIX

*(Coercion and Enticement of a Person for Prostitution; Aiding and Abetting --*
*18 U.S.C. § 2422(a) and 2)*

D-1     GREGORY CARR
          also known as "Paul Cutlass,"

57.     Paragraphs 1 through 45 are incorporated in this Count by reference as though fully set forth herein.

58.     Beginning on or about August 28, 2007, in the Eastern District of Michigan and

18

elsewhere, defendant GREGORY CARR, aided and abetted by others, attempted to and did

knowingly persuade, induce, entice, or coerce an individual, namely Female D, to travel in

interstate commerce to engage in prostitution or in any sexual activity for which any person can

be charged with a criminal offense, all in violation of Title 18, United States Code, Sections

2422(a) and 2.


## COUNT SEVEN

*(Coercion and Enticement of a Person for Prostitution; Aiding and Abetting --*
*18 U.S.C. § 2422(a) and 2)*

D-1     GREGORY CARR
        also known as "Paul Cutlass,"


        59.     Paragraphs 1 through 45 are incorporated in this Count by reference as though

fully set forth herein.

        60.     Beginning on or about October 31, 2007, in the Eastern District of Michigan and

elsewhere, defendant GREGORY CARR, aided and abetted by others, attempted to and did

knowingly persuade, induce, entice, or coerce an individual, namely Female E, to travel in

interstate commerce to engage in prostitution or in any sexual activity for which any person can

be charged with a criminal offense, all in violation of Title 18, United States Code, Sections

2422(a) and 2.

19

## COUNT EIGHT

*(Coercion and Enticement of a Person for Prostitution; Aiding and Abetting --*
18 U.S.C. § 2422(a) and 2)

D-1     GREGORY CARR
        also known as "Paul Cutlass,"

61.     Paragraphs 1 through 45 are incorporated in this Count by reference as though fully set forth herein.

62.     Beginning on or about March 16, 2008, in the Eastern District of Michigan and elsewhere, defendant GREGORY CARR, aided and abetted by others, attempted to and did knowingly persuade, induce, entice, or coerce an individual, namely Female F, to travel in interstate commerce to engage in prostitution or in any sexual activity for which any person can be charged with a criminal offense, all in violation of Title 18, United States Code, Sections 2422(a) and 2.

## COUNT NINE

*(Coercion and Enticement of a Person for Prostitution; Aiding and Abetting --*
18 U.S.C. § 2422(a) and 2)

D-1     GREGORY CARR
        also known as "Paul Cutlass,"

63.     Paragraphs 1 through 45 are incorporated in this Count by reference as though fully set forth herein.

64.     Beginning on or about December 1, 2008, in the Eastern District of Michigan and elsewhere, defendant GREGORY CARR, aided and abetted by others, attempted to and did

20

knowingly persuade, induce, entice, or coerce an individual, namely Female G, to travel in

interstate commerce to engage in prostitution or in any sexual activity for which any person can

be charged with a criminal offense, all in violation of Title 18, United States Code, Sections

2422(a) and 2.

### COUNT TEN

*(Coercion and Enticement of a Person for Prostitution; Aiding and Abetting --*
*18 U.S.C. § 2422(a) and 2)*

D-1    GREGORY CARR
       also known as "Paul Cutlass,"

65.    Paragraphs 1 through 45 are incorporated in this Count by reference as though

fully set forth herein.

66.    Beginning on or about January 19, 2009, in the Eastern District of Michigan and

elsewhere, defendant GREGORY CARR, aided and abetted by others, attempted to and did

knowingly persuade, induce, entice, or coerce an individual, namely Female H, to travel in

interstate commerce to engage in prostitution or in any sexual activity for which any person can

be charged with a criminal offense, all in violation of Title 18, United States Code, Sections

2422(a) and 2.

### COUNT ELEVEN

*(Conspiracy to Launder Monetary Instruments)*
*18 U.S.C. § 1956(h)*

D-1    GREGORY CARR
       also known as "Paul Cutlass,"

21

D-2    LAURIE CARR,
D-4    NAYUBET LOANI SWASO

67.    From on or about 2001 through the present, in the Eastern District of Michigan and elsewhere, the defendants GREGORY CARR, LAURIE CARR, and NAYUBET LOANI SWASO, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

(a)    to transport, transmit and transfer and attempt to transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, namely, Panama and Costa Rica, with the intent to promote the carrying on of specified unlawful activity, that is, coercion or enticement of a person for prostitution in violation of Title 18, United States Code, Section 2422(a), in violation of Title 18, United States Code, Section 1956(a)(2)(A)(i);  and

(b)    to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, coercion or enticement of a person for prostitution in violation of Title 18, United States Code, Section 2422(a), knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

**Manner and Means**

68.     The manner and means used to accomplish the objectives of the conspiracy

included, among others, the acts described in Paragraphs 1 through 45 of this Indictment, in the

Eastern District of Michigan, and elsewhere.


All in violation of Title 18, United States Code, Section 1956(h).


**FORFEITURE ALLEGATIONS**

(*Forfeiture*- 18 U.S.C. §§ 981(a)(1)(C) as applied by 28 U.S.C. § 2461(c), 982, and 2428)

D-1    GREGORY CARR
           also known as "Paul Cutlass,"
D-2    LAURIE CARR,
D-3    NAYUBET LOANI SWASO,
D-4    MICHELLE MATARAZZO
D-5    FABIOLA CONTRERAS

69.     Paragraphs 1-68 are incorporated in these forfeiture allegations by reference as

incorporated herein.

70.     Upon the conviction of the offense alleged in Count 1 of this indictment, the

defendants, GREGORY CARR, LAURIE CARR, NAYUBET LOANI SWASO, MICHELLE

MATARAZZO, and FABIOLA CONTRERAS, jointly and severally, shall forfeit to the United

States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and as applied by 28

U.S.C. § 2461(c), any property, real and personal, which constitutes or is derived from proceeds

traceable to a violation of ... any offense constituting "specified unlawful activity" (as defined in

section 1956(c)(7) of title 18), or a conspiracy to commit such offense, including violations of

23

law enumerated at 18 U.S.C. § 1961(1), including 18 U.S.C. § 2422(a).

71.    Upon conviction of the offenses alleged in Counts 2 - 10 of this indictment, the defendants GREGORY CARR and LAURIE CARR, shall, pursuant to 18 U.S.C. § 2428, forfeit to the United States, any property, real or personal, used or intended to be used to commit or to facilitate the commission of said offenses, and or any property, real or personal, constituting or derived from proceeds obtained by the defendants, directly or indirectly, as a result of the commission of said offenses.

72.  Upon conviction of the offenses alleged in Count 11 of this indictment, the defendants, GREGORY CARR, LAURIE CARR, NAYUBET LOANI SWASO, jointly and severally, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real and personal involved in such offense, and all property traceable to such property, including, without limitation, the total amount laundered, as to which the United States may request a forfeiture money judgment.

73.    If any of the property described in paragraph 70-72 hereof as being subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), as a result of any act or omission of the defendants –

A.    cannot be located upon the exercise of due diligence;

B.    has been transferred to, sold to, or deposited with a third party;

C.    has been placed beyond the jurisdiction of this Court;

D.    has been substantially diminished in value; or

E.    has been commingled with other property which cannot be divided without difficulty;

24

the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), as applied by

Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code,

Section 853(p), intends to seek forfeiture of all other property of the defendants, jointly and

severally, up to the value of the property subject to forfeiture described in paragraph 70-72.

THIS IS A TRUE BILL

s/Grand Jury Foreperson
GRAND JURY FOREPERSON

BARBARA L. MCQUADE
United States Attorney

s/John O'Brien II
JOHN O'BRIEN II
Assistant United States Attorney
Chief, Violent and Organized Crimes Unit

s/Jennifer Blackwell
JENNIFER BLACKWELL
JULIE BECK
Assistant United States Attorneys

Dated: October 6, 2010

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>08-CR-20400 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008  [  ]

| **Companion Case Information** | Companion Case Number: |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | Judge Assigned: |
| ☐ Yes            ☒ No | AUSA's Initials: |

Case Title: USA v.  D-1 Gregory Carr, D-2 Laurie Carr, D-3 Nayubet Loani Swaso,
D-4 Michelle Matarazzo, D-5 Fabiola Contreras

County where offense occurred : Wayne

Check One:            ☒ Felony                    ☐ Misdemeanor                    ☐ Petty

> \_\_\_\_ Indictment/\_\_\_\_Information --- **no** prior complaint.
> \_\_\_\_Indictment/\_\_\_\_ Information --- based upon prior complaint [Case number: ]
> \_\_X\_\_Indictment/\_\_\_\_ Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

Superseding to Case No: 08-20400 _____      Judge: **Tarnow** _____

> ☐      Original case was terminated; no additional charges or defendants.
> ☐      Corrects errors; no additional charges or defendants.
> ☐      Involves, for plea purposes, different charges or adds counts.
> ☒      Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| Gregory Carr | Counts 6 -10 | |
| Fabiola Contreras | Count  1 | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

October 6, 2010
_____
Date

JENNIFER L. BLACKWELL
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone:  (313) 226-9165
Fax: (313) 226-2873
E-Mail address: jennifer.blackwell3@usdoj.gov